Dear Mr. McConnell:
You have requested our office to issue an opinion on various questions concerning children in special education classes who are carriers of Hepatitis B. In particular, you have asked:
 1. Is there any way that the Webster Parish School Board can keep from enrolling a student with Hepatitis B?
 2. If the answer to No. 1 is negative, what can they do to protect the remaining students in the class and/or school?
 3. Can the School Board notify the parents of the other children concerning the infected student and not run afoul of the privacy law?
In order to adequately answer your questions, we researched the nature of Hepatitis B. In so doing, our office contacted Dr. Louise McFarland, State Epidemiologist. Dr. McFarland explained that Hepatitis B is a virus carried by a person who often shows no symptoms of being infected with the disease, especially if the carrier is a young child. However, a carrier may exhibit symptoms such as jaundice, vomiting, or abdominal pains. Hepatitis B is usually transmitted by blood or sexual contact. It is very rare for the virus to be transmitted by way of saliva. In order for it to be transmitted by saliva, one would have to be in contact with excessive amounts of saliva and on a daily basis. She also said that the virus can survive for a period of weeks outside of the body in a cool atmosphere. However, if the blood dries on a surface, for the virus to be transmitted to another person, the blood would have to be in a solution and exposed to an open wound or membrane.
Dr. McFarland explained all of this in a letter to the Superintendent of the Webester Parish School Board, Mr. Jerry Lott. A copy is attached for your convenience. Dr. McFarland expressed that there may be now, and probably has been in the past, other children in the school who are carriers of the virus of whom the School Board is unaware.
In addition, Dr. McFarland provided both our office and the School Board with a copy of recommendations issued by the Louisiana Department of Education for the control of communicable diseases in schools. A copy of these recommendations is attached for your convenience. These recommendations specifically address Hepatitis B, which is considered a communicable disease or infection not known to be spread by casual
contact. The recommendations provide that if a student has a disease not known to be spread by casual contact, such as HIV infection or Hepatitis B, "the decision as to whether the affected person will remain in the school or employment setting will be addressed on a case by case basis by a review panel to ensure due process." The recommendations also provide a method by which to conduct the review, and the membership of the panel which includes the child's treating physician. In a proceeding such as the one outlined in the recommendations, the panel will be able to consider all of the pertinent medical and behavioral characteristics of the individual student. Some of those may include the tendency of the student to bite others or "wet his pants" or drool if the child is of a young age.
Also pertinent to this issue is the Louisiana Department of Education's Handbook for School Administrators, Bulletin 741. Number 1.O1O.02 of the Systems Policies and Standards states in pertinent part:
 Each school system shall have policies and procedures that address, but are not limited to, the following items:
 E. excluding students with communicable diseases and readmitting them following their recovery.
According to this regulation, the Webester Parish School System should have a policy for admitting and excluding students with communicable diseases. We were informed by Superintendent Lott that the Webester Parish School Board does not have a policy specifically addressing student carriers of Hepatitis B. The School Board does have a policy concerning students with HIV, which is similar to Hepatitis B insofar as the modes of transmission are concerned. Because of this similarity, the School Board may want to adopt its policy for admitting students that are HIV infected as its policy for admitting students with Hepatitis B and follow it when deciding to admit a student carrier of the virus. In the alternative, the School Board could adopt the Department of Education's recommendations pertaining to Hepatitis B as its policy for admitting carriers.
In applying whatever policy the School Board adopts or creates, the Board should be aware that there are certain constitutional rights a student must be afforded. In particular, the School Board must not violate a student's due -process and equal protection rights. We advise you to look to the recommendations of the Department of Education that I referred to previously to fashion a review that would preserve these rights. The recommendations provide an opportunity for the individual student's medical status to be evaluated and a chance for an informed decision to be made by a panel as to whether or not there is a real medical risk presented by the student's presence in the classroom.
You have asked what can be done to protect the remaining students if the School Board enrolls a student carrier of Hepatitis B. Dr. McFarland informed our office and Mr. Lott that other students could be immunized against Hepatitis B, but she does not think that it is necessary to prevent transmission since the disease is not spread by casual contact. Because Hepatitis B is spread usually only by sexual contact or blood, the risk of other students becoming infected by another student in the usual classroom setting is minimal. It may be possible to preclude a student from participating in contact sports where there is a possibility of bleeding injuries with which other students could come into direct contact. Once again, this decision should be evaluated on a case by case basis considering the particularities of an individual student and his constitutional rights.
You have also asked if the parents of other children in the school can be notified of the infected child's condition. It is our opinion that this would violate the student's constitutional right to privacy afforded by both the federal and state constitutions. The Louisiana State Constitution of 1974, Article I, section 5 states in pertinent part:
 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.
In Tooley v. Canal Motors, Inc., 296 So.2d 453 (La.Ct.App. 4th Cir. 1974), the court, citing previous cases, defined the right of privacy as follows:
 "It has been defined as the "right to be left alone' and as the "right to live one's life in seclusion without being subjected to unwarranted and undesired publicity.'"
An individual has a protected right to privacy where such privacy is reasonably expected. In other words, if it is reasonable for an individual to expect certain personal information to be protected from disclosure to the general public, then there is a constitutionally protected right to privacy.
Directly opposed to an individual's right to privacy is the public's right to know, which is embodied in the Public Records Law at LSA-R.S.44:1 et seq. In general, it provides that records in the possession of public entities pertaining to the functioning to that entity are subject to disclosure to the public upon a reasonable request. The purpose of the Public Records Law is to maintain the integrity of the functioning of public bodies and to hold them accountable to the public by preventing secrecy in this functioning. Once it is found that there is a reasonable expectation of privacy with regards to certain records, the right of the public to know should be weighed against the individual's right to privacy when there is a conflict between these two rights.
Clearly an individual has an expectation of privacy with regards to his medical records. Medical records are personally identifiable and in no way pertain to the performance of the School Board, the public entity possessing the records. This office has held that medical records of a teacher are confidential and may not be released without the teacher's permission. (See Opinion No. 79-242) In addition, LSA-R.S. 23:1293
provides that medical records of employees maintained by the Office of Worker's Compensation are exempt from public disclosure. These are just a few examples of the protection that medical records are afforded because of the personal and confidential nature of the information that they contain.
Based on the above discussion, it is the opinion of this office that the Webster Parish School Board may not notify the parents of the other students of a particular child's medical condition without violating that student's right to privacy.
In light of the privacy concerns surrounding this issue, the Louisiana Department of Education has provided the following recommendation:
 F. Any medical information that pertains to students or staff members, proceedings, discussions and documents shall be confidential information. Before any medical information is shared with anyone in the school setting a "Need to Know" review shall be made which includes the parent/guardian, student if 18, employee or his/her representative unless the information is required to meet the mandates of federal or state law or Board of Elementary and Secondary Education Policy. (Emphasis added).
These recommendations take into consideration that there may be certain personnel at the school who may need to be informed of the child's condition. For instance, a teacher or school nurse who is aware that a child is a Hepatitis B carrier will be able to take necessary precautions when an injured child bleeds or vomits or perhaps "wets his pants". Those school personnel who are aware of the child's condition may also be able to notify the carrier's parents if there are other illnesses which the carrier might be subjected to and more likely to contract from his classmates. All of these considerations can be addressed in the recommended "Need to Know Review."
I hope that I have sufficiently addressed all of your concerns in this opinion. If I can be of any further assistance, please do not hesitate to contact this office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH CONRAD-LANGSTON Assistant Attorney General
RPI/BCL/pb/0851
OPINION NUMBER 93-285
RELEASED JULY 9, 1993
100 — SCHOOLS SCHOOL DISTRICTS — Teachers, Principals, 
Superintendents, Sabbatical Leave, Extracurricular Activities, Students 90-C — PUBLIC RECORDS R.S. 44:1, R.S. 44:36, R.S. 17:81, R.S. 17:415,20 U.S.C. § 1232g, 42 Fed. Reg. 121 A. 543
The Public Records Act applies to records held by a school, school board, or superintendent unless such records are confidential in nature. Confidential or personal information concerning a student is not subject to the Act but schools and superintendents are required to keep records, pursuant to LSA-R.S. 17:415, as prescribed by the Superintendent of Education.
Schools and school boards must also follow BESE rules concerning the retention of such records. In the absence of any rule mandating the retention of such records, school boards may adopt their own policies for the retention and destruction of student records after the student has ceased to be enrolled in school.
Mr. John L. Diasselliss, III Assistant District Attorney 40th Judicial District Court Parish of St. John the Baptist Post Office Box 6 Edgard, Louisiana 70049